**Mark Bradford (MB 6002)**
**MARK BRADFORD, PC**
**299 12th Street**
**Brooklyn, New York 11215-4903**
**Telephone: (347) 413-3287**
**mb@markbradfordpc.com**

**Cara R. Burns (CB 1071) (PHV to be requested)**
**MIMS, KAPLAN, BURNS & GARRETSON**
**28202 Cabot Road, Ste 300**
**Laguna Niguel, California 92677**
**Telephone: (310) 314-1721**
**Facsimile: (949) 340-9737**
**cburns@hmkblawyers.com**

**Attorneys for Plaintiff**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————x

| | |
|---|---|
| **CEREMONY OF ROSES ACQUISITION LLC** | **CIVIL ACTION NO. 1:25-cv-7512** |
| **Plaintiff,** | **MEMORANDUM OF LAW** |
| **v.** | **IN SUPPORT OF EX PARTE** |
| | **APPLICATION FOR: A** |
| **JOHN DOES 1-100, JANE DOES 1-100** | **TEMPORARY RESTRAINING** |
| **AND XYZ COMPANY,** | **ORDER; SEIZURE ORDER;** |
| | **AND AN ORDER TO SHOW** |
| | **CAUSE WHY A PRELIMINARY** |
| | **INJUNCTION AND SEIZURE** |
| **Defendants.** | **ORDER SHOULD NOT ISSUE** |

—————————————————————x

## TABLE OF CONTENTS

I .      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.   DEFENDANTS SHOULD BE ENJOINED FROM SELLING,
DISTRIBUTING AND MANUFACTURING INFRINGING
MERCHANDISE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.   Defendants Have Violated Section 1125(a) and Serious Questions
Have Been Raised . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     B.   Defendants Have Violated Section 1114 and Serious Questions
Have Been Raised . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     C.  Plaintiff Will Suffer Irreparable Injury . . . . . . . . . . . . . . . . . . . . . . . . 7

     D.  The Threatened Injury to Plaintiff Outweighs Potential Harm
to Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

V.     PLAINTIFF IS ENTITLED TO EX PARTE RELIEF CONSISTING OF
A TEMPORARY RESTRAINING ORDER AND A SEIZURE ORDER . . . 9

     A.   An Injunction and Seizure Order are Necessary To Combat
Defendants' Activities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     B.   Rule 65 of The Federal Rules Of Civil Procedure And the
Lanham Act Provide Authority For The Ex Parte Relief
Plaintiff Seeks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     C.   It Is Appropriate To Issue A TRO And
Search Order To Enjoin Activities Of Persons Whose Identities
Are Presently Unknown . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VI.    A TOUR INJUNCTION AND SEIZURE ORDER
IS BOTH NECESSARY AND PROPER . . . . . . . . . . . . . . . . . . . . . . . . . 13

     A.   Courts Have Issued Tour Injunctions and Seizure Orders . . . . . . . . 13

     B.   The Court Will Have Jurisdiction Over The Defendants and
Those Acting In Concert With Them . . . . . . . . . . . . . . . . . . . . . . . . . 16

     C.   The Order Binds Those Who Participate In Defendants'
Unlawful Conduct. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

     D.   Defendants Have A Full And Fair Opportunity To Be Heard . . . . . . 19

**VII.    CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**

## **TABLE OF AUTHORITIES**

### **CASES**

*AMF, Inc. v. Sleekcraft Boats,*
    599 F.2d 341 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Babbitt v. United Farm Workers National Union,*
    442 U.S. 289 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bivens v. Six Unknown Names Agents of Federal Bureau of Narcotics,*
    403 U.S. 388, 91 S.Ct. 1999 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Brockum Co. v. Blaylock,*
    729 F.Supp. 438 (E.D. Pa. 1990) . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Boston Athletic  v. Sullivan,*
    867 F.2d 22 (1st Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*Corning Glass Works v. Jeannette Glass Co.,*
    308 F. Supp. 1321 (S.D.N.Y.), aff'd, 432 F.2d 784 (2d Cir 1970) . . . . . . . .  . . . . 8

*ebay, Inc. V. MercExchange, L.L.C.,*
    547 U.S. 388, 126 S. Ct. 1837, 164 L. Ed 2d 641 (2006) . . . . . . . .. . . .. . . . .  7

*Federal Express Corp. v. Federal Espresso, Inc.*
    201 F. 3d 168,  (2nd Cir, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Golden Door, Inc. v. Odisho,*
    437 F.Supp. 956  (N.D. CA 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hard Rock Cafe Licensing v. Pacific Graphics,*
    776 F. Supp. 1454  (W.D. Wash. 1991) . . . .. . . . . . . . . . . . . . . . . . .. . . . . . . .  8

*Hasbro Inc. v. Lanard Toys, Ltd.*
    858 F. 2d 70 (2nd Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Joel  v. Does,*
    499 F. Supp. 791 (E.D. Wisc. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 11

*John Hancock Mutual Life Ins. Co. v. Central National Bank in Chicago,*
    555 F. Supp. 1026 (N.D. Ill. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11, 15

*Malletier v. Burlington Coat Factory*
    426 F.3d 532 (2nd Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . 3

*McGraw Edison Co. v. Performed Line Products,*
    362 F.2d 339 (9th Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Moon Records v. Does,*
    217 U.S.P.Q. 39 (N.D. Ill. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*New West Corp. v. NYM Co. of California, Inc.,*
    595 F.2d 1194  (9th Cir. 1979)     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 6

*Nice Man Merchandising, Inc. v. Logocroft, Ltd.,*
    23 U.S.P.Q. 2d 1290 (E.D. Pa. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Nintendo of America v. NTDEC,*
    822 F. Supp. 1462 (D. Ariz. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Polaroid Corp. v. Polarad Electronics,*
    287 F. 2d 492 (2d Cir. 1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Plant v. Does,*
    19 F. Supp.2d 1316 (S.D. Fla. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*R.H. Donnelley Corp. v. Illinois Bell Telephone,*
    595 F.Supp.1202 (N.D. Ill. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*SKS Merch, LLC v. Barry,*
    233 F. Supp. 2d 841 (E.D. Ky 2002) . . . . . . . . . . . . . . . . . . . . . . . .4, 6, 7, 11, 13, 14

*Steele* v. *Bulova  Watch Co.*,
    344 U. S. 280, 289 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*The Five Platters, Inc. v. Purdie,*
    419 F. Supp. 372 (D. Md. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Trump v Casa, Inc.,*
    606 U.S. ____, No. A884, 2025 WL 1773631 (June 27, 2025) . . . . . . . . . .15, 16

*Universal City Studios, v. Kamma Industries,*
    217 U.S.D.Q. 1162 (S.D. Tex. 1982) . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . 9

*Vuitton et Fils, S.A.,*
    606 F.2d 1   (2d Cir. 1979) . . . . . . . .. . . . . . . . . . . . . . . .. . . . . . . . . . 9, 11

*Vuitton, Et Fils, S.A. v. Carousel Handbags,*
    362 F.2d 339 (9th Cir. 1979)     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Waffenschmidt v. Mackay,*
    763 F. 2d 711 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Winterland Concessions Co. v. Sileo,*
    528 F.Supp. 1201 (N.D. Ill. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*World Wrestling v. Unidentified Parties,*
    770 F. 3d 1143 (5th Cir 2014)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

## **STATUTES**

15 U.S.C. § 1051 et. seq.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

15 U.S.C. § 1114 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

15 U.S.C. § 1116 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13, 15

15 U.S.C. § 1125 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. §§ 1651 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

Fed. R. Civ. P. Rule 4(j) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Civ. P. Rule 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12, 13, 16

# I.    <u>INTRODUCTION.</u>

Plaintiff Ceremony of Roses Acquisition LLC ("Plaintiff") submits this Memorandum of Law in support of its Ex Parte Application for: a Temporary Restraining Order; a Seizure Order; and an Order to Show Cause Regarding Why a Preliminary Injunction and Seizure Order Should Not Issue (the "Order").  Plaintiff seeks this Order to stop the sale at concerts of infringing merchandise, and to seize the same here at the concerts to be held on September 17, 18, 20 and 21, 2025 at Madison Square Garden in New York, New York, and at other tour locations, which bears the federally registered trademarks, service marks, likenesses, logos and/or other indicia of the popular musical performer "**DUA LIPA**" (the "Artist"). Similar orders have been granted in this and other Districts to other performers.[1] The Artist's tour has just begun and so have Defendant Bootleggers' infringing activities, as recently as last night.  See Declaration of Alan Sitchon (hereinafter "Sitchon Decl."), filed concurrently herewith, ¶¶ 10 and 11, Exhibits C and D thereto. As set forth below, such relief is warranted under the Lanham Act., Fed. R. Civ. P. Rule 65, and the All Writs Act.

# II.    <u>STATEMENT OF FACTS.</u>

On September 17, 18, 20 and 21, 2025 at Madison Square Garden in New York, New York and elsewhere in the United States, the popular Artist "**DUA LIPA**" will perform. See Sitchon Decl., ¶ 1, Exh A thereto, filed concurrently herewith.  The Artist has obtained a United States

---

[1] From this District for other performers include: *Bravado v. Does*, Case No. 1:24-cv-06517 PAE (S.D. NY 2024) (Judge Engelmayer) (for Nicki Minaj's tour); *Merch Traffic, v. Does*, Case No. 23-cv-6794 LLS (S.D. NY 2023) (Judge Stanton) (for Jonas Brothers' tour); *Merch Traffic. v. Does*, Case No. 1:23-cv-3947 DLC (S.D. NY 2023) (Judge Cote) (for BLINK-182's tour); and *Merch Traffic. v. Does*, Case No. 22-cv-6839 AT (S.D. NY 2022) (Judge Torres) (for Harry Styles' tour); among others. See Certificate of Counsel of Cara Burns, ¶ 6, Exh A.

Federal Trademark Registration for her "**DUA LIPA**" trademark.[2]   Plaintiff is the exclusive licensee of the Artist, and the sole merchandiser for the Artist's authorized merchandise ("Authorized Tour Merchandise"), such as shirts, hats and posters, which will be sold during the current tour. Sitchon Decl. ¶¶ 2-6.

Defendants currently identified as Does, also referred to as "Bootleggers," are engaged in the manufacture, distribution and sale of infringing shirts, hats, posters and other merchandise that bear the unlicensed federally registered trademark, service marks, likenesses, logos and other indicia of the Artist ("Infringing Merchandise" or "Bootleg Merchandise") and will do so at the concerts in this District and at other concerts on the tour.  Sitchon Decl. ¶¶ 1, 8-18.  The tour has just begun. Photographs showing Defendant Bootleggers selling Infringing Merchandise at prior DUA LIPA concerts is attached to the Sitchon Decl. as Exhibit C.  Examples of the Infringing Merchandise that contains the DUA LIPA trademarks being sold by these Defendant Bootleggers is attached to the Sitchon Decl. as Exhibit D.

To combat these infringing activities on prior tours for other performers of similar stature, Plaintiff has obtained from this District and other Districts temporary restraining orders and seizure orders, and thereafter preliminary injunctions and seizure orders to seize the Defendants' infringing merchandise for those other performers. See Certificate of Counsel ("Burns Cert."), Exhibits thereto.

Plaintiff easily meets the required showing to obtain such relief and there is no defense to the claims brought by Plaintiff.  Plaintiff is the exclusive licensee of the Artist that is authorized to sell the Artist's Authorized Tour Merchandise during the tour. Sitchon Decl. ¶¶ 2-7. Plaintiff

---

[2]   **"DUA LIPA"** is a Federally Registered trademark, Registration No. 7128814 for use in connection with: International Class ("IC") 025, clothing; IC 016, paper products; IC 014 metals and jewelry; IC 041  entertainment services; IC 009 recordings; IC 018, bags; IC 036 advertising and store services; and IC 003 perfumes, and among other goods and services. Sitchon Decl., ¶ 5.

has therefore demonstrated a substantial likelihood that it will succeed on the merits. The Infringing Merchandise harms Plaintiff and the public in numerous ways. Each sale of Infringing Merchandise by Defendants is an irrecoverably lost sale for Plaintiff and Plaintiff's monetary losses would be substantial. Moreover, the loss and damage to the goodwill of both Plaintiff and the Artist, through the distribution of inferior merchandise, cannot be calculated or remedied. Sitchon Decl. ¶¶ 8-24; Burns Cert. ¶¶ 6-19.

The public interest will be served by issuance of the relief requested since it favors the protection of property/contractual rights. There is no potential harm to any legitimate interest of Defendants or any other persons if the requested relief is issued. In addition, the relief requested here *is the only proven method of protecting Plaintiff's rights and the public from inferior and/or infringing merchandise* which bears a false designation of origin and sold by the Defendants, who are accountable to no one, including for payment of royalties, sales taxes, or for quality control. Sitchon Decl. ¶¶ 8-19.

The need for an ex parte order is manifestly evident. Defendants' actions are completely unauthorized, and Defendants have both the means and motivation to destroy vital evidence before a noticed hearing and avoid service. Similar orders have been granted to protect the rights of Plaintiff and other merchandisers against bootleggers and their infringing merchandise. In response to these orders, although thousands of bootleggers have been served, bootleggers do not appear since apparently they know their activities are unlawful. See Burns Cert. Accordingly, Plaintiff requests that this Court issue the requested order.

III.    **DEFENDANTS SHOULD BE ENJOINED FROM SELLING, DISTRIBUTING AND MANUFACTURING INFRINGING MERCHANDISE**.

A plaintiff seeking a temporary restraining order or preliminary injunction must establish: "(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a)

likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly" in its favor. *Malletier v. Burlington Coat Factory*. 426 F.3d 532, 537 (2nd Cir. 2005) citing *Federal Express Corp. v. Federal Espresso, Inc.,* 201 F.3d 168, 173 (2nd Cir. 2000). In trademark disputes, "a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm." *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir. 1988). (citation omitted).

### A.  Defendants Have Violated Section 1125(a) and Serious Questions Are Raised.

Courts have repeatedly held that the use of registered and unregistered names, images and logos of performers by bootleggers causes irreparable injury and violates section 43(a) of the Lanham Act.  *SKS Merch, LLC v. Barry,* 233 F. Supp. 2d 841, 853-854 (E.D. KY 2002) (tour concert seizure order issued since the sales by Doe Defendant Bootleggers of merchandise bearing the unregistered marks of the artist Toby Keith at his concerts violate section 1125 (a)); *Nice Man Merchandising, Inc. v. Logocroft, Ltd.,* 23 U.S.P.Q. 2d 1290 (E.D. Pa. 1992) (use of trademarks, logos and likenesses of artists in defendants' merchandise without permission from plaintiff merchandiser "is likely to cause confusion, to cause mistake and to deceive. Such confusion and/or deception will continue to result in immediate and irreparable injury to plaintiff."); *Winterland Concessions Co. v. Sileo,* 528 F.Supp. 1201 (N.D. Ill. 1981), *mod. other grounds*, 735 F.2d 257 (7th Cir. 1984).

The purpose of the Lanham Act is "to protect persons engaged in . . . commerce against unfair competition" and "to prevent fraud and deception in such commerce."  15 U.S.C. §1127. This broad prohibition against "unfair competition" covers not only confusion as to source or sponsorship between Defendants' Infringing Merchandise and Plaintiff's Authorized Tour Merchandise, it also prohibits the misappropriation of the efforts of others. See *Boston Athletic v.*

*Sullivan*, 867 F.2d 22, 33 (1st Cir. 1989) ("a party cannot reap where it has not sown"); *R.H. Donnelley Corp. v. Illinois Bell Telephone,* 595 F.Supp 1202, 1206 (N.D. Il. 1984) ("those who invest time, money and energy into the development of a product and its accompanying good will should be allowed to reap the advantages of their investment").

To prevail in an action for unfair competition under § 43(a), a plaintiff must establish the same two factors necessary to prevail in an action for trademark infringement: (1) the mark must be legally protectable, and (2) the defendant's use of an identical or similar mark is likely to cause confusion among consumers. *New West Corp. v. NYM Co. of California, Inc.,* 595 F.2d 1194, 1201 (9th Cir. 1979) (for purposes of injunctive relief, it is not necessary to show actual confusion or deception, but merely the likelihood of such). These elements are clearly present here. The merchandise are goods, the Defendants travel from state to state and effect the sale of Plaintiff's merchandise during the tour and, because of the use of Plaintiff's marks, there is the false designation which is likely to confuse.

Factors to consider when determining whether a likelihood of confusion exists are: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) consumers' sophistication in the relevant market. *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492 (2d Cir. 1961).

Judged by these factors, Defendants' have violated the Lanham Act and there is no excuse of Defendants' use of Plaintiff's marks. The Federally Registered trademarks, service marks, likenesses, logos and other indicia of the Artist licensed to Plaintiff are strong marks, known to literally millions of members of the public. Defendants are using the same exact marks as Plaintiff

and selling their Infringing Merchandise at the Artist's performances.  Using the traditional scale of marks from the generic to the arbitrary, the Artist's marks are arbitrary in that they do not describe the goods to which they are attached but instead provide identification, thus they have acquired secondary meaning. Defendant Bootleggers will be copying the Artists' trademarks, service marks, likenesses, and other indicia, therefore there can be no doubt as to consumer confusion.  Sitchon Decl. ¶¶ 9-19. Since Defendants are aware of the Artist's use of her own trademark, there is a presumption of bad faith. *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir. 1979) (deception may be presumed from the knowing adoption of a similar mark).

It is clear that the sale of Infringing Merchandise bearing the trademarks, service marks, likenesses, logos and other indicia of well-known performers constitutes a violation of §43(a) of the Lanham Act. *SKS Merch, supra, Nice Man Merchandising,* 23 U.S.P.Q. at 1292 ("the use of well-known performers' names and likenesses upon novelty merchandise without the performers' authorization constitutes a violation of § 43(a)").  As set forth by the District Court in *Brockum Co. v. Blaylock*:

> Defendant [Bootlegger] cannot obtain a "freeride" at the [exclusive licensee's] expense. Its shirts are designed to take advantage of the efforts and expenditures of the plaintiff and benefit from the goodwill associated with the Rolling Stones, their 1989 tour, and the promotion of the event created or undertaken by the plaintiff and the Rolling Stones. Such unlicensed use of the Rolling Stones' name would permit the defendant to reap where it had not sown. Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 33 (1st Cir. 1989). Defendant's argument that the T-shirt in question merely celebrates an "event" is circular reasoning, at best, given the fact that there would be no "event" to celebrate, were it not for the hard work and financial outlay provided by the plaintiff. 729 F. Supp. at  444.

Defendants have manufactured Infringing Merchandise for the sole purpose of selling it at the Artist's concerts. Defendants' intend to "free ride" on the Artist's marks that have acquired value through the extensive efforts of the Plaintiff/Artist.  This is precisely the type of conduct Section 43(a) was designed to stop.

**B.**    **Defendants Have Violated Section 1114 and Serious Questions Are Raised.**

Plaintiff is likely to prevail on its § 1114 claim for the same reasons that it is likely to prevail under § 1125(a).  Under 15 U.S.C. § 1114, Plaintiff must show that Defendants have used the registered trademark: (1) without consent; (2) in connection with the sales of goods; and (3) where such use was likely to cause confusion or to deceive purchasers as to the source or origin of the goods. See *New West Corp. v. NYM CO. of California,* 595 F. 2d at 1201. ("The likelihood of confusion test also is used for claims of trademark infringement under 15 U.S.C. 1114.).  Since the Defendants use the federally registered mark on Infringing Merchandise and sell such goods at the very places where the Group will be performing, there can be no doubt as to the confusion and intent of the Defendants.

**C.**    **Plaintiff Will Suffer Irreparable Injury.**

The Trademark Modernization Act, effective December 18, 2021, amended 15 U.S.C. § 1116 (a) to add the following: "A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm …  upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order." This reaffirmed the standard that there is a rebuttable presumption of irreparable harm in a trademark matter when the likelihood of success on the merits is shown, which was in dispute after the Supreme Court's ruling *in eBay, Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 126 S. Ct. 1837, 164 L.Ed.2d 641 (2006).  Plaintiff has shown above its likelihood of success on the merits of its trademark claims.

Moreover, Plaintiff has sufficiently proven imminent irreparable harm by the continuing sales by the Defendant Bootleggers and their Infringing Merchandise. Plaintiff has no control over the Infringing Merchandise or its quality, and, accordingly, will suffer a loss of goodwill due to sales of inferior Infringing Merchandise. These peddlers appear at each venue, rarely have

identification or keep records of their sales. This is the very type of irreparable injury the Trademark Act seeks to stop. Sitchon Decl. ¶¶ 8-17.  *SKS Merch, LLC*, 233 F. Supp. 2d at 847 (although irreparable injury is presumed once infringement is shown, "Plaintiffs have independently established that they will be irreparably harmed absent a Preliminary Injunction enjoining the sale of bootleg merchandise related to Toby Keith throughout the nation.").

**D.    The Threatened Injury to Plaintiff Outweighs Potential Harm to Defendants.**

Plaintiff has demonstrated that the threatened injury to Plaintiff outweighs the potential harm to the Defendants. *Hard Rock Café v Pacific*, 776 F. Supp. 1454, 1463 (W.D. WA 1991) (valuable "Hard Rock Cafe" logo symbolizes the goodwill connected with [plaintiff's] business and that good will should not be jeopardized by placing it in the hands of [defendants].") Any inconvenience to Defendants will be merely economic, consisting of lost profits from sale of illegal, Infringing Merchandise (and a bond will be posted by Plaintiff).  Plaintiff will be seizing only Infringing Merchandise from those Bootleggers at the venues. Those in active concert with, or assisting the bootlegging, are also violating the Lanham Act and must be enjoined, as provided for by Rule 65.

Moreover, the public interest is furthered by issuance of a preliminary injunction.  Indeed, one of the essential purposes of the Lanham Act is to protect the consuming public from being misled as to the source of goods:

> While plaintiff is injured when consumers purchase [defendant's merchandise] believing it to be [plaintiff's merchandise], consumers, too are being directly victimized.  An injunction is thus in the public interest; only if the distribution of [defendant's goods] is stopped can further fraud be avoided.

*Corning Glass Works v. Jeannette Glass Co.,* 308 F. Supp. 1321, 1328 (S.D.N.Y.), aff'd, 432 F.2d 784 (2d Cir 1970).  Public interest is especially strong when a federal statute expressly forbids the conduct in question.  Here, Defendants' acts in flagrant disregard of the laws. In sum, Plaintiff is entitled to injunctive relief.

## IV.    PLAINTIFF IS ENTITLED TO EX PARTE RELIEF CONSISTING OF A TEMPORARY RESTRAINING ORDER AND A SEIZURE ORDER.

### A.    An Injunction and Seizure Order Are Necessary To Combat Defendants' Activities.

Courts have issued temporary restraining orders and seizure orders in advance of concerts to stop the sale of Infringing Merchandise. S*ee* Burns Cert. and Exhibits thereto.  This procedure is specifically authorized by 15 U.S.C. §1116 "upon such terms as the court may deem reasonable" to prevent violations of Lanham Act.  See, *In re Vuitton et Fils, S.A.,* 606 F.2d 1, 4 (2d Cir. 1979) and cases cited therein (court has inherent power to issue seizure orders); *Universal City Studios, v. Kamma Industries*, 217 U.S.D.Q. 1162 (S.D. Tex. 1982). *See also* Burns Cert.

Moreover, the Lanham Act specifically contemplates that a temporary restraining and seizure order against Infringing Merchandise may be had by ex parte application (Section 1116 (d)) and in enacting the Trademark Counterfeiting Act of 1984, Congress in no way intended to change existing case law, precedent under Rule 65, and the traditional equitable powers of a District Court under the Lanham Act, which have long been interpreted by numerous courts to authorize the issuance of ex parte seizure orders involving unregistered trademarks. The legislative history of the Act makes clear that it was not intended to supersede or negate the line of cases beginning with *In Re Vuitton*, 606 F.2d 1 (2d Cir. 1979), and the protection they provide.  Further, Section 1116 (d) authorizes ex parte orders where, in addition to the traditional requirements for injunctive relief: (1) an order other than an ex parte seizure order is not adequate, (2) the applicant has not publicized the requested seizure, and (3) the person against whom seizure would be ordered would destroy or otherwise make inaccessible to the court the infringing matters. 15 U.S.C. §1116(d)(4)(B).

In the instant case, defendant bootleggers have appeared at past concerts and will appear at the future concerts.  It is clear from the nature of their activities that they will be present in this

jurisdiction only long enough to sell their Infringing Merchandise. After the Infringing Merchandise is sold, they will promptly disappear. Even if Defendants received notice and were served with a proposed temporary restraining order, it is highly unlikely that they would voluntarily comply and not sell their goods. *See* Sitchon Decl. and Burns Cert. Simply stated, there is no other means of preventing the Defendants from destroying Plaintiff's legitimate business without a seizure order.

A Court of Equity must be flexible and willing to issue an injunction appropriate under the particular circumstances of the case. See the All Writs Act, 28 U.S.C. § 1651 which broadly authorizes Federal Courts to issue "all writs necessary or appropriate in the aid of their respective jurisdiction and agreeable to the usages and the principles of law." Since there is no other remedy available to Plaintiff to this prevent irreparable injury, this Court has the power to order the seizure of the Infringing Merchandise as an exercise of its inherent power to obtain and retain jurisdiction in the matter. In *Joel v. Does*, 499 F. Supp. 791 (E.D. Wisc. 1980), the Court stated:

> Were the injunction to be denied, Brockum would be without any legal means to prevent what is clearly a blatant infringement of their valid property rights. While the proposed remedy is novel, that in itself should not weigh against its adoption by this Court. A Court of Equity is free to fashion whatever remedies will adequately protect the rights of the parties before it. *Id.* at 792.

**B.**     **Rule 65 of The Federal Rules Of Civil Procedure And the Lanham Act Provide Authority For The Ex Parte Relief Plaintiff Seeks.**

Rule 65 of the Federal Rules of Civil Procedure permits the issuance of an ex parte temporary restraining order when failure to issue such an order would result in "immediate and irreparable injury, loss, or damage," and movant demonstrates why notice should not be required. The irreparable harm from Defendants selling and distribution activities has been shown. It will continue to mount until Defendants are enjoined. Since Defendants have the temerity to conduct

blatantly unlawful activities, making a business of selling infringing articles, and have an economic

interest in continuing their unlawful actions, there is no reason to believe they will voluntarily stop.

The Court in *Vuitton, supra*, found that immediate and irreparable injury existed because

of the substantial likelihood of confusion created by the itinerant Bootleggers selling their

infringing goods that plaintiff had shown why notice should not be given:

> [A]lthough this Court has frowned upon temporary restraining orders issued even
> without telephone notice there are occasions when such orders are to be countenanced.
> In our judgment, this case is just such an occasion. [***] Assuming that all of the
> other requirements of Rule 65 are met, the Rule by its very terms allows for the
> issuance of an ex parte temporary restraining order when (1) the failure to issue it
> would result in "immediate and irreparable injury, loss or damage" and (2) the
> applicant sufficiently demonstrates the reason that notice "should not be required." In
> a trademark infringement case such as this, a substantial likelihood of confusion
> constitutes, in and to itself, irreparable injury sufficient to satisfy the requirements of
> Rule 65(b)(1). [* * *] If notice is required, that notice all too often appears to serve
> only to render fruitless further prosecution of the action. This is precisely contrary to
> the normal and intended role of notice, and it is surely not what the authors of the rule
> either anticipated or intended. 606 F.2d at 4-5.

**C.**  **It Is Appropriate To Issue A Temporary Restraining And Seizure Order To Enjoin Activities Of Persons Whose Identities Are Presently Unknown**

Plaintiff is proceeding to stop the bootlegging activities of Defendants whose identities are

presently unknown. Courts have long recognized that known adversaries may be designated as

"John Does" until plaintiff is able to specifically identify them. See *SKS Merch, supra, John

Hancock Mutual Life Ins. Co. v. Central National Bank in Chicago*, 555 F. Supp. 1026 (N.D. Ill.

1983). Plaintiff need not await the consummation of the threatened injury to obtain preventive

relief. *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298 (1979); *Bivens v. Six

Unknown Names Agents*, 403 U.S. 388, 91 S.Ct. 1999 (1971).

In similar circumstances, many federal courts have issued seizure orders against Doe

Defendants to seize infringing merchandise associated with the tours of well-known performers.

See Exhibits to the Burns Cert. In each case, an ex parte seizure order was issued against

unidentified "Doe" defendants to prevent the sale of and to seize infringing merchandise bearing the trademarks and other indicia of performers represented by the plaintiff in those actions. In *Billy Joel v. Does, supra*, the District Court held that, although the court does not favor unknown defendants and may not have in personam jurisdiction, regarding Bootleggers:

> I am convinced that the requested injunction [and seizure order] should issue in the present case. ... The problem of the defendants' identifies is met, I believe, by the fact that copies of the summons, complaint, and restraining order itself will be served on all persons from whom Billy Joel merchandise is seized on the night of the concert. These parties will be asked to reveal their names so that they can be added as parties to the law suit. [* * *] [w]ere the injunction to be denied, plaintiffs would be without any legal means to prevent what is clearly a blatant infringement of their valid property rights. 499 F. Supp. at 792.

If courts failed to recognize "Doe" Defendants, clever wrongdoers could (and will) easily conceal their identities until a statute of limitations run out, or, as here, they leave Plaintiff with no practical recourse for clear violations of their rights. *Moon v. Does,* 217 U.S.P.Q. 39 (N.D. Ill. 1981) ("the problem regarding the identity of the defendants will be met by requiring copies of the complaint and the [order] to be served upon all persons from whom infringing merchandise is seized..."). Consistent with Fed. R. Civ. P. Rule 4(j), Plaintiff's process servers will make every reasonable effort to further identify the Defendants for purposes of amending the pleadings.

It has been the repeated experience of Plaintiff and Plaintiff's counsel that most, if not all, of the Bootleggers are persons extremely experienced with selling Infringing Merchandise. Most are not neophytes, but rather somewhat sophisticated businessmen who operate in stealth to thwart the legitimate rights of Plaintiff. Bootleggers travel around the country from venue to venue selling their counterfeit wares. Many defendants even have the audacity to print the entire tour schedule of performers such as the Artist on the back of the bootleg T-shirts which they sell. Any person found selling a shirt bearing the entire Tour schedule can fairly be said to be "aiding and abetting, or acting in active concert with," served Defendants who have sold similar shirts at other concerts.

V.    **A TOUR INJUNCTION AND SEIZURE ORDER IS BOTH NECESSARY AND PROPER.**

    A.    **Courts Have Issued Tour Injunctions and Seizure Orders**.

It has been shown by the declaration submitted in this matter that the sale of Infringing Merchandise by the Defendants is in violation of the Lanham Act – which federal law is uniform throughout the United States -- and causes deception to the public.  As such, all remedies under the Lanham Act are appropriate. The tour specific relief sought has been granted in numerous cases in other jurisdictions across the country in factual and legally nearly identical circumstances. See Burns Cert.  It is specifically authorized by statute. Section 1116 provides for enforcement and service "anywhere in the United States where [Defendants] may be found." 15 U.S.C. § 1116(a). See Burns Cert. and Sitchon Decl. Further, Fed. R. Civ. P. Rule 65 provides that an order granting injunctive relief binds the parties, as well as those related and those in active concert or participation with them who receive actual or other notice of an order even if beyond the territorial limits of the district court enjoining said activity.  Fed. R. Civ. P. 65(d). See, *Nintendo of America v. NTDEC,* 822 F. Supp. 1462, 1466, 1468 (D. Ariz. 1993) (the Court issued a worldwide injunction requiring defendants to deliver up infringing goods for destruction); *Golden Door, Inc. v. Oisho,* 437 F.Supp. 956, 968 (1977) ("plaintiff's market area, and hence, sphere of reputation, are nationwide. . . . [Therefore t]he scope of the injunction must therefore be nationwide"); *Benson v. Paul Winley Record Sales Corp*., 452 F. Supp. 516 (S.D.N.Y. 1978); *The Five Platters, Inc. v. Purdie*, 419 F. Supp. 372 (D. Md. 1976) ("the Lanham Act provides for nationwide enforcement of injunctions").   The propriety of such a multi-district order has long been established by numerous court orders throughout the country. As explained by the Fifth Circuit in *Waffenschmidt v. Mackay*, 763 F. 2d 711 (1985):

        Non-parties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they

actively aid and abet a party in violating that order. This is so despite the absence of other contacts with the forum. [ * * * ] Courts do not sit for the idle ceremony of making orders and pronouncing judgments, the enforcement of which may be flouted, obstructed, and violated with impunity, with no power in the tribunal to punish the offender. [Federal] courts, equally with those of the state, are possessed of ample power to protect the administration of justice from being thus hampered or interfered with. *Id.* at 714, 716 (citations omitted).

*SKS Merch, LLC v. Barry, supra*, and *Plant v. Does*, 19 F. Supp.2d 1316 (S.D. Fla. 1998) are the main decisions that address the issues in this matter. In each case, the plaintiff merchandiser sought injunctions and seizure orders to enforce the rights of performers during the entirety of a performer's tour. The District Court in *SKS Merch,* after careful review of the *Plant* decision, as well as other adverse decisions at that time[3], granted the proposed injunction and seizure order to seize the infringing merchandise.

The Court in *SKS Merch* noted that Plaintiff in *Plant* did not identify defendants. As set forth in the Sitchon Declaration and the Certificate of Counsel, Defendants have already appeared on this tour, appeared during the Group's 4 prior tours (for which tour seizure orders were granted) and appeared during prior actions for major tours of this Group's stature for which seizure orders were granted. See also *World Wrestling v. Unidentified Parties*, 770 F. 3d 1143, 1147 (5th Cir 2014) (for seizure of merchandise at performances, identification met because although plaintiff "cannot know in advance the specific identities of counterfeiter who will present themselves at any given event, …it does know that any non-affiliated seller at or near an event is almost certainly a counterfeiter."). The harm to Plaintiff, however, is irreparable. The <u>SKS Merch</u> Court recognized

---

[3]/ At that time, there were two published cases where similar relief was requested*: Brockum Intern'l v. Various John Does*, 551 F. Supp. 1054 (E.D. Wisc. 1982) (decided soon after enactment of § 1116 (d) stating these issues are best left to local authorities); *Brockum Co. v. Various John Does*, 685 F. Supp. 476 (E.D. Pa. 1988) (decided shortly after the 1116 took effect; the Court granted the local TRO and seizure order, but declined to issue a national order because plaintiff had made an inadequate showing that the order would be carried out properly, and that it was the only realistic way to control the problem). For reasons set forth in *SKS Merch* and the Burns Certificate, these cases and the reasoning of *Plant* and its progeny should not be controlling.

what has been the modus operandi of these Bootlegger Defendants – that they fail to carry identification, they are well aware the goods they sell are unauthorized, and they often flee when approached by authorized individuals.  Id., at 849. *See also* Sitchon Decl. and Burns Cert.  To require Plaintiff to wait further for "identification" - since the defendants usually do not provide any -- would seriously impede Plaintiff's rights.

Moreover, Plaintiff seeks to enforce *clear, uncontroverted federal law*, that is uniform throughout the United States.  Plaintiff is not seeking to enforce a directive, executive order or policy, and the action is not directed against or sought by a branch of government.  The federal laws Plaintiff has applied under for its remedies are not in dispute.  Plaintiff has no cause of action under any state law.  And, most importantly - Defendant Bootleggers have no right to sell their Infringing Merchandise – containing the Artist's Trademarks - anywhere in the United States.  See Burns Cert. ¶¶ 21-23.

Further, citing a trademark case, the Supreme Court in *Trump v. Casa*, specifically held that it was not barring multi-jurisdictional injunctions, but rather "universal" ones. "Even a traditional, parties-only injunction can apply beyond the jurisdiction of the issuing court. *Steele* v. *Bulova Watch Co.*, 344 U. S. 280, 289 (1952) (When 'exercising its equity powers,' a district court 'may command persons properly before it to cease  or perform acts outside its territorial jurisdiction')." *Trump v Casa, Inc.* 606 U.S. ____, nt 1, No. A884, 2025 WL 1773631 (U.S. June 27, 2025)  Plaintiff here does not seek a "universal" injunction - an order that can be applied to or used by similarly situated plaintiffs, or even for Plaintiff's other tours, performers and trademarks. The proposed orders Plaintiff seeks are narrowly tailored for use solely for itself, solely for this particular Artist's trademarks and tour at specific days and times.  The orders sought are solely to stop Defendant Bootleggers who appear at and near concert venues where the Artist is performing, who do not have a fixed location, who do not keep records, and who clearly and undisputably

conduct infringing activities at the Artist's concerts.  This is the only proven method to provide complete relief to Plaintiff.  See Burns Cert. ¶ 22; Sitchon Decl. ¶ 13. See *Trump v Casa,* at page 4 Section (2) (citation omitted) (" 'complete relief' is not synonymous with ' universal relief.' It is a narrower concept, long embraced in the  equitable tradition, that allows courts to 'administer complete relief  between the parties.' ")

In addition, although the plaintiff in *SKS Merch* waited for many performances after the bootlegging activities began before seeking relief, Plaintiff here requests that it should not wait that long; the harm is clear and irreparable.  Moreover, it is contemplated this relief is to be had on the basis of an ex parte application, not a noticed motion.  With each performance Plaintiff will be harmed, the bootlegging will continue and the only one who will gain, and gain momentum, will be the defendants.  Further, the Court in *Plant* was concerned that no "procedural means" existed to issue and enforce the order. The Court in *SKS Merch* held section 1116 permits such seizure orders. See also Burns Cert.

Concerns about service raised in *Plant* are addressed here as they were in *SKS Merch*; Defendants' names may be added after service has taken effect and names (preferably proper) will be provided. Because the Infringing Merchandise is the same or substantially similar from location to location, this represents a concerted effort and therefore the Defendants are on notice.  Further, Defendants always have an opportunity to be heard.  *See also* Section V. D. below. Local orders throughout the country will not afford Defendants any greater protection and would waste judicial resources.

B.    **The Court Will Have Jurisdiction Over The Defendants and Those Acting In Concert With Them.**

Once the Defendants have been served at the concerts here in New York, this Court acquires personal jurisdiction over them.  Fed. R. Civ. P. Rule 4.  See *John Hancock Mutual Life*

*Ins. Co. v. Central Nat'l Bank*, 555 F. Supp. 1026 (N.D. Ill. 1983) (service of process under Rule 4 confers jurisdiction on this Court even with respect to Doe defendants).  At the preliminary injunction hearing, this Court should enjoin all the Bootlegging activities during the entirety of the Artist's tour.  Absent such an order, complete relief here would be impossible to achieve; separate orders would have to be sought at every location on the tour, resulting in a terrible waste of the parties' and the federal courts' resources.  As a result, this Court, and many others, have issued tour specific preliminary injunctions and seizure orders to stop bootlegging.  See Burns Cert. and Sitchon Decl.  In addition, 15 U.S.C. § 1116, specifically provides for enforcement of a Court's order in other districts.

The proposed injunction and seizure order will be effective against all persons involved in Defendants' Bootlegging operation.  An order granting injunctive relief will bind not only the actual named parties to an action, but also "their officers, agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of the Order by personal service or otherwise."  Fed. R. Civ. P. Rule 65(d).  *Vuitton, Et Fils, S.A. v. Carousel Handbags*, 592 F.2d 339, 344 (9th Cir. 1979) (a court may bind parties to preserve its ability to render a judgment in a case over which it has jurisdiction*); McGraw Edison Co. v. Performed Line Products*, 362 F.2d 339, 344 (9th Cir.) *cert. denied,* 385 U.S. 919 (1966) (non-parties may be found in contempt of an injunction if they have actual notice of the order, and aid and abet in its violation).

The bootlegging operation to be enjoined here is a concerted action of many individuals acting together.  The nature and quality of merchandise seized indicates a concerted operation as Plaintiff's servers often observe the same individuals selling Infringing Merchandise at each of the performer's tour dates. The quantities of such merchandise indicates a large manufacturing operations.  Bootleggers or their infringing goods go from one location on the tour to another.

17

Therefore, the relief granted to Plaintiff must continue for all concerts to be effective. Sitchon Decl. ¶¶ 9-17.

Each time there is a seizure pursuant to the order, the requirement of notice to the person against whom the relief operates will be satisfied. Once the preliminary injunction is issued it will be served on anyone selling Infringing Merchandise on the tour. They will therefore have notice of the injunction at the concert and when their goods are seized. The proposed order against Defendants and those acting in concert with them is appropriate and required if Plaintiff is to obtain complete relief from Defendants' concerted unlawful acts.

**C    The Order Binds Those Who Participate In The Defendants' Unlawful Conduct.**

By an appropriate bond placed with this Court by Plaintiff, Defendants always have the right to be heard and are guaranteed a source of recovery for any wrongdoing whatsoever to them. The only effective way for Plaintiff to obtain relief is to have this Court enter a preliminary injunction and seizure order, the mandate of which will be respected across this country. If the relief is not granted, Defendants will continue to use the names and goodwill associated with the Artist and Plaintiff who has spent many years, and vast sums of money to cultivate.

It is believed that all seizures will be made upon Bootleggers selling identical or substantially identical goods throughout the country and will be through a concerted operation. See Sitchon Decl. However, in the unlikely event that any individuals spontaneously decide to print their own "homemade" shirts, such individuals would be violating Plaintiff's rights and would be subject to suit in any event. Seizure of such shirts, if any exist, would be virtually identical to a local order issued in that district, which would not afford them any greater notice or due process. Moreover, requiring Plaintiff to go throughout the United States would impose a great burden upon both Plaintiff and the judicial resources of the Federal Courts. However, to avoid even a theoretical

question, Plaintiff will waive any objections to venue and transfer the action, though notably, no

defendant bootlegger has appeared in any action filed by the Plaintiff. See Burns Cert.

D.    **Defendants Have A Full And Fair Opportunity To Be Heard.**

Although it is not known at this time whether any Defendants will appear before the Court

on the return date to oppose the requested relief, given our experience, it is doubtful that any will

do so.  However, they certainly have that opportunity.  Plaintiff would welcome such appearances

for it would permit it to identify the bootleggers, take discovery from them, discover their printing

sources and pursue them for money damages.  The proposed Order will provide that a person who

wishes to challenge the seizure has the opportunity to file a motion with this or any other Court

requesting a hearing within a certain number of days subsequent to the seizure.  This gives any

defendant a full and fair opportunity to be heard, while the merchandise, the critical piece of

evidence, is preserved.  However, without the proposed injunction and seizure order, Plaintiff will

be forced to file separate civil actions in the United States District Courts throughout the country

at an estimated expense of well over $400,000 in legal fees and costs.  Thus, it would be inequitable

to place such an enormous and unnecessary burden on Plaintiff whose rights are clear and there's

a remedy that works.

## VI.    <u>CONCLUSION</u>

Based on the foregoing, Plaintiff respectfully requests that its application be granted.

Dated:  September 10, 2025          Respectfully submitted,
                                    By: /s/ Mark Bradford
                                    Mark Bradford (MB 6002), Mark Bradford, PC
                                    299 12th Street, Brooklyn, New York 11215-4903
                                    Tel: (347) 413-3287, mb@markbradfordpc.com

                                    Cara R. Burns (CB 1071)(PHV to be requested)
                                    Mims, Kaplan, Burns & Garretson,
                                    28202 Cabot Rd, Ste 300, Laguna Niguel, CA 92677
                                    Tel: (310) 314-1721, cburns@hmkblawyers.com
                                    Attorneys for Plaintiff